**IN THE UNITED STATES BANKRUPTCY COURT FOR THE**
**EASTERN DISTRICT OF TENNESSEE**

In re

                                          Case No.  09-35785

ADRIEN MARIUS TANGUAY

        Debtor


**MEMORANDUM ON OBJECTION**
**TO CONFIRMATION OF PLAN**
**AND PLAN TERMS FILED BY DCFS USA, LLC**


**APPEARANCES:**    LAW OFFICES OF MAYER & NEWTON
                       John P. Newton, Jr., Esq.
                       1111 Northshore Drive
                       Suite S-570 Landmark Center
                       Knoxville, Tennessee  37919
                       Attorneys for Debtor

                  HALE, DEWEY & KNIGHT, PLLC
                       Holly N. Knight, Esq.
                       Aaron J. Nash, Esq.
                       88 Union Avenue
                       Suite 700
                       Memphis, Tennessee  38103
                       Attorneys for DCFS USA, LLC

                  GWENDOLYN M. KERNEY, ESQ.
                       Post Office Box 228
                       Knoxville, Tennessee  37901-0227
                       Chapter 13 Trustee




**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

This contested matter is before the court on the Objection to Confirmation of Plan and Plan Terms Filed By DCFS USA, LLC (Objection to Confirmation) filed on November 16, 2009, by DCFS USA, LLC (DCFS), objecting to confirmation of the Debtor's proposed Chapter 13 Plan. A hearing on the Objection to Confirmation was held on February 17, 2010, at which time the parties agreed that an evidentiary hearing would not be required and that all issues could be resolved on stipulations and briefs.

The record before the court consists of Joint Stipulations of Facts filed on February 15, 2010, as amended on February 17, 2010. The Debtor's Brief in Support of Plan Confirmation and the Memorandum of Facts and Law in Support of Objection to Confirmation of Plan and Plan Terms Filed By DCFS USA, LLC were both filed on February 10, 2010. As set forth in the Joint Statement of Issues, also filed by the parties on February 10, 2010, the issues before the court are summarized as follows: (1) whether the Debtor's 2006 Freightliner Coronado semi-truck tractor (Freightliner) securing the DCFS claim constitutes "collateral consisting of any other thing of value" under the hanging paragraph of 11 U.S.C. § 1325(a); and (2) if the Freightliner does constitute "any other thing of value," whether the hanging paragraph prohibits the Debtor from bifurcating DCFS's claim into secured and unsecured components under 11 U.S.C. § 506(a).

This is a core proceeding. 28 U.S.C. § 157(b)(2)(L) (2006).

# I

The Debtor filed the Voluntary Petition commencing his Chapter 13 bankruptcy case on October 20, 2009. DCFS is a creditor of the Debtor, holding a claim in the amount of $89,358.96

at 17.5% interest secured by the Freightliner. It is undisputed that the Freightliner is a motor vehicle purchased by the Debtor for non-personal use on March 2, 2009, within the 1 year preceding the bankruptcy filing, and that DCFS has a purchase money security interest in the Freightliner securing the debt that is the subject of its claim.

The Debtor's Amended Plan, filed on February 9, 2010, proposes weekly payments to the Chapter 13 Trustee of $400.00 for 60 months, all tax refunds over $500.00, and a dividend of 5-20% to nonpriority unsecured creditors. With respect to DCFS, the Debtor proposes to cramdown its secured claim by valuing the Freightliner at $50,000.00 with DCFS to receive monthly payments of $1,000.00 plus 6% interest. DCFS objects to the proposed cramdown.[1]

## II

Pursuant to 11 U.S.C. § 1325(a), bankruptcy courts are to confirm plans that comply with its enumerated requirements, including, as material to this contested matter, the following:

> (5) with respect to each allowed secured claim provided for by the plan—
>
> . . . .
>
> (B)(i) the plan provides that—
>
> (I) the holder of such claim retain the lien securing such claim until the earlier of—
>
> (aa) the payment of the underlying debt determined under nonbankruptcy law; or

---

[1] Objections to confirmation were also filed on November 16, 2009, by First Tennessee Bank National Association, on November 17, 2009, by Wells Fargo Bank, N.A., and on November 19, 2009, by the Chapter 13 Trustee, each of which was withdrawn on February 15, 2010, February 16, 2010, and January 27, 2010, respectively.

>> (bb) discharge under section 1328; and
>
>> (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;
>
>> (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
>
>> (iii) if—
>
>>> (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
>
>>> (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan[.]
>
>> . . . .
>
> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [period][2] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49[3]) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

11 U.S.C. § 1325(a) (2006).

In this contested matter, the conflict arises over the interpretation of the final quoted unnumbered paragraph in § 1325(a), which has come to be referred to by most courts as the hanging

---

[2] The court supplies this word which was presumably inadvertently omitted by the drafters of the statute.

[3] "'[M]otor vehicle' means a vehicle driven or drawn by mechanical power and manufactured primarily for use on public streets, roads, and highways, but does not include a vehicle operated only on a rail line." 49 U.S.C. § 30102(a)(6) (2006).

paragraph. Specifically, the parties disagree as to the interpretation of the final clause, "or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing."

The Debtor argues that the hanging paragraph, in its entirety, applies only to collateral purchased for personal use, either a motor vehicle subject to the 910-day provision or any non-motor vehicle personal property acquired within the 1-year period as denoted by the second provision, and that because the Freightliner was purchased for non-personal use, it falls outside the scope of the hanging paragraph. Conversely, DCFS argues that the 1-year "any other thing of value" provision of the hanging paragraph applies to all types of personal property acquired by a debtor through a purchase money security interest, irrespective of intended purpose, and includes motor vehicles purchased for non-personal use.

### III

The starting point for the interpretation of any statute is its plain language and where the statutory language "is plain, 'the sole function of the courts is to enforce it according to its terms.'" *United States v. Ron Pair Enters., Inc.*, 109 S. Ct. 1026, 1030 (1989) (quoting *Caminetti v. United States*, 37 S. Ct. 192, 194 (1917)). Only when the plain language of the statute is unclear may a court resort to a review of congressional intent or legislative history, *Hoffman v. Comshare, Inc. (In re Comshare, Inc. Sec. Litig.)*, 183 F.3d 542, 549 (6th Cir. 1999), and "[a]bsent a clearly expressed legislative intention to the contrary, that language must be ordinarily regarded as conclusive." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 100 S. Ct. 2051, 2056 (1980). In its

examination, the court should scrutinize the statute as a whole and "not look merely to a particular clause in which general words may be used, but . . . in connection with it the whole statute . . . and the objects and policy of the law, as indicated by its various provisions, and give to it such a construction as will carry into execution the will of the Legislature." *Azarte v. Ashcroft*, 394 F.3d 1278, 1287-88 (9th Cir. 2005) (quoting *Kokoszka v. Belford*, 94 S. Ct. 2431, 2436 (1974) (citation omitted)). "[A]s long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute." *Ron Pair Enters., Inc.*, 109 S. Ct. at 1030.

Likewise, it is "[a] fundamental canon of statutory construction . . . that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning[,]" *Perrin v. United States*, 100 S. Ct. 311, 314 (1979), and "[a] court should look beyond the language of the statute only when the text is ambiguous or when, although the statute is facially clear, a literal interpretation would lead to internal inconsistencies, an absurd result, or an interpretation inconsistent with the intent of Congress." *Dorris v. Absher*, 179 F.3d 420, 429 (6th Cir. 1999). "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Conn. Nat'l Bank v. Germain*, 112 S. Ct. 1146, 1149 (1992) (quoting *Rubin v. United States*, 101 S. Ct. 698, 701 (1981)); *see also United States v. Plavcak*, 411 F.3d 655, 660-61 (6th Cir. 2005) ("[I]f the words of the statute are unambiguous, the judicial inquiry is at an end, and the plain meaning of the text must be enforced.") (quoting *Hudson v. Reno*, 130 F.3d 1193, 1199 (6th Cir. 1997) (citing *Ron Pair Entrs., Inc.*, 109 S. Ct. at 1030)).

A conflict among authorities has evolved from the interpretation of the hanging paragraph regarding whether the "910-day" provision precludes the inclusion of motor vehicles within the scope of the 1-year catch-all for "any other thing of value."  In substance, "the issue is whether the 'other thing of value' in the second clause modifies the language 'motor vehicle' or 'motor vehicle . . . acquired for the personal use of the debtor' in the first clause." *In re Horton*, 398 B.R. 73, 76 (Bankr. S.D. Fla. 2008).  A number of courts have adopted the former interpretation and held that the hanging paragraph consists of two separate categories of property acquired through a purchase money security interest:  motor vehicles purchased by a debtor for personal use within 910 days preceding the bankruptcy filing, and any other property, except a motor vehicle, purchased by the debtor within the 1 year period preceding the bankruptcy filing.  *See In re Thompson*, 2009 Bankr. LEXIS 1993, at *9, 2009 WL 1758757, at *4 (Bankr. N.D. Ohio June 17, 2009)*; Horton*, 398 B.R. at 75; *In re Ford*, 2008 Bankr. LEXIS 1381, at *18, 2008 WL 1925153, at *5-6 (Bankr. E.D. Wis. Apr. 29, 2008); *In re Balsinde*, 2007 Bankr. LEXIS 4058, at *5, 2007 WL 4247642, at *2 (Bankr. S.D. Fla. Nov. 29, 2007).  A minority of courts, however, have adopted the second interpretation, finding that the plain language of the statute includes motor vehicles purchased for non-personal use within the 1-year period.  *See In re Littlefield*, 388 B.R. 1, 4-6 (Bankr. D. Me. 2008); *In re Hickey*, 370 B.R. 219, 221 (Bankr. D. Neb. 2007).[4]

---

[4] Additionally, other courts have not addressed this specific issue but have made conclusions as to the types of collateral affected by the hanging paragraph. *Compare In re Hayes*, 376 B.R. 655, 664 (Bankr. M.D. Tenn. 2007) (stating in dicta, while determining whether credit disability insurance, "GAP" insurance, and negative equity are included within the scope of the hanging paragraph, that the hanging paragraph "has different rules for two classes of collateral – 'motor vehicle' or 'any other thing of value.'") *and In re Parish*, 2006 Bankr. LEXIS 1205, at *3-4, 2006 WL 1679710, at *1 (Bankr. M.D. Fla. Mar. 10, 2006) (finding that the language of the hanging paragraph "is unambiguous" and that 11 U.S.C. § 506 "is inapplicable in two scenarios":  those for motor vehicles falling within the 910 restrictions and those when "the collateral for that debt consists of any other thing of value (other than a motor

(continued...)

The reasoning relied upon by these courts is varied. In coming to the conclusion that "a car that was not acquired for the personal use of the debtor is not subject to the second clause of the 'hanging paragraph,'" the *Horton* court reasoned:

> The result hinges on the meaning of "other thing of value" as that term is used in the statute. Does it mean anything of value *other than a motor vehicle*, as most courts have concluded? Or, as *Littlefield* found, does it mean anything of value (including a motor vehicle), *other than a motor vehicle acquired for personal use*?
>
> This Court sides with the majority. As Judge Lundin noted in *Hayes*, "Congress made a policy decision to treat motor vehicle collateral differently than any other thing of value." 376 B.R. at 665. As noted earlier, several other courts agree that the second clause refers to collateral other than motor vehicles.
>
> This Court adopts the majority view for two other reasons. First, since the "hanging paragraph" creates an exception to the general right of a debtor to value secured claims under §506, any ambiguity should be resolved in favor of limiting, not expanding the exception. Second, the scant legislative history supports the majority interpretation. In discussing the last clause of the hanging paragraph, the House Report states as follows:
>
>> Where the collateral consists of any other *type* of property having value, section 506(b) does not apply if the debt was incurred during the one-year period preceding the filing of the bankruptcy case.
>
> H.R. Rep. No. 109-31(I), Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 109th Cong. (2005). (emphasis added).
>
> Although Judge Haines found this passage "singularly unhelpful" in *Littlefield*, 388 B.R. at 4, n.5, this Court reads it differently. In using the phrase "other type of property" in discussing "other thing of value," it appears to this Court that Congress was talking about property other than a motor vehicle. It seems a strained reading of the legislative history to conclude that a motor vehicle acquired for business use is a different "type of property" than a motor vehicle acquired for personal use.

---

[4](...continued)
vehicle)") *with In re Curtis*, 345 B.R. 756, 763 n. 28 and 764 (Bankr. D. Utah 2006) (finding that the debtor's argument that a creditor can never have a purchase money security interest in a motor vehicle renders the first part of the hanging paragraph "superfluous, void, and insignificant" and "would also eviscerate the second part of the hanging paragraph where the creditor's collateral consists of a motor vehicle used for business purposes that was acquired within one year of the filing of the petition.").

*Horton*, 398 B.R. at 75-76.[5]

Similarly, the *Balsinde* court held that, in order to adopt the reading urged by the creditor, it "would have to ignore the word 'other' in the phrase 'any other thing of value.'" The word "other . . . connotes differentiation. In this case the statute differentiates between motor vehicles and any other type of collateral." *Balsinde*, 2007 Bankr. LEXIS 4058, at *5-6, 2007 WL 4247642, at *2. In addition, the court, stating that "it is a commonplace of statutory construction that the specific governs the general," determined that because the first section of the hanging paragraph deals specifically with motor vehicles, the second paragraph is inapplicable to motor vehicles. *Balsinde*, 2007 Bankr. LEXIS 4058, at *5, 2007 WL 4247642, at *2 (quoting *Morales v. TWA*, 112 S. Ct. 2031, 2037 (1992)). This court also stated the following:

> Finally, the court notes that adopting HSBC's reading would give motor vehicle lenders who extend credit within one year of bankruptcy extra protection not contemplated by the code. They would have the traditional protection offered by the first part of the hanging paragraph and they would also be able to avoid the "personal use" requirement through the second part of the paragraph. If Congress had intended to remove the personal use requirement for motor vehicle loans incurred within one year of the filing date, they were certainly capable of saying so. There is nothing in the statute, as it is drafted, that would suggest that motor vehicle lenders are to be extended this added protection.

*Balsinde*, 2007 Bankr. LEXIS 4058, at *7-8, 2007 WL 4247642, at *3. Also focusing on the inclusion of the word "other," the *Thompson* court reasoned that "[i]f motor vehicles could qualify under the second category, the word 'other' would not be necessary; the category would be 'any thing of value' rather than 'any *other* thing of value.' . . . The term *other* must be given effect, and

---

[5] In agreeing that "affording car lenders the protection of the second clause of the hanging paragraph would allow auto lenders to avoid the 'personal use' requirement of the first clause, an unintended legislative benefit[,]" *Horton*, 398 B.R. at 75 (citing *Balsinde*, 2007 Bankr. LEXIS 4058, at *8, 2007 WL 4247642, at *3), the *Horton* court lists the *Hickey* and *Curtis* decisions among those in the majority view. This court, however, reads those cases as falling in line, instead, with the minority view.

its only logical effect given the terms of the statute is the exclusion of the term *motor vehicle* from the second category of collateral that the hanging paragraph protects from bifurcation." *Thompson*, 2009 Bankr. LEXIS 1993, at *9, 2009 WL 1758757, at *4.

Finally, when addressing this issue, the *Ford* court examined the majority decisions and found that their reasoning "directly supports the proposition that the second clause of the hanging paragraph does not apply to motor vehicles, while the cases cited by Nissan and the Trustee[6] do not really hold that a motor vehicle that flunks the 'personal use' test can qualify as another thing of value under the hanging paragraph." *Ford*, 2008 Bankr. LEXIS 1381, at *17-18, 2008 WL 1925153, at *5.

In contrast to the foregoing decisions, when addressing the hanging paragraph, the *Hickey* court made the following finding:

> In describing the collateral for a debt incurred within the 910 days preceding the bankruptcy filing, the statute specifically refers to "a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor." It is not simply a motor vehicle, but instead a motor vehicle acquired for the personal use of the debtor. The second part of the paragraph pertains only to the situation where collateral consists of any other thing of value – that is, the collateral is not a motor vehicle acquired for the personal use of the debtor. The plain language indicates that the modifier "acquired for the personal use of the debtor" applies to motor vehicles

---

[6] In addressing the cases relied upon by Nissan and the trustee, *In re Quevedo*, 345 B.R. 238 (Bankr. S.D. Cal. 2006), and *In re Curtis*, 345 B.R. 756 (Bankr. D. Utah 2006), the *Ford* court stated that:

> The facts of *Quevedo* and *Curtis* . . . are not analogous to this case. *Quevedo* dealt with a non-purchase money loan, and the analysis in *Curtis* did not even concern a motor vehicle. Furthermore, neither *Quevedo* nor *Curtis* specifically analyze [sic] whether the second portion of the hanging paragraph applies to an automobile . . ., but rather suggest that the hanging paragraph has two separate categories of collateral.

*Ford*, 2008 Bankr. LEXIS 1381, at *14, 2008 WL 1925153, at *4.

and is not one of the applicable elements when the collateral for the debt consists of any other thing of value.

*Hickey*, 370 B.R. at 221.

Likewise, the *Littlefield* court focused on the language of the statute and observed that "[g]iven the statute's amenability to opposing plain meaning interpretations, it is ambiguous," thus requiring the court to "turn to the legislative history for guidance[,]" but finding the legislative history "singularly unhelpful [and that it] merely sets up the conundrum of 'thing's' uncertain referent in another way." *Littlefield*, 388 B.R. at 4 n.5. The court then examined the case law, focusing primarily upon the analysis set forth in *Balsinde,* acknowledging that the majority of courts addressing the issue had held that motor vehicles were not included within the 1-year provision. Regarding *Balsinde*, the court observed, in material part:

> The *Balsinde* rationale is unconvincing. It does no good to invoke hoary principles of statutory construction if one invokes them after embracing an assumption that dictates the result. Only if the specific is assumed to be "motor vehicle," rather than "motor vehicle . . . acquired for the personal use of the debtor," the conclusion (a non-personal use motor vehicle cannot be an "other thing") is, as *Balsinde* said, "impossible." *In re Balsinde*, 2007 WL 4247642m at *2. Indeed, if the specific controls the general, does not the hanging paragraph's first clause *specifically* address motor vehicles acquired for the debtor's personal use?
>
> Moreover, *Balsinde's* rendition does not square with a common sense reading of the hanging paragraph's words. How, if at all, does the meaning of "any other thing of value" differ from "anything else of value" on a straightforward reading? What substantive difference can be ascribed between the two phrases? And if you substitute "anything else of value" in the statute's text, it becomes clear that *Balsinde* misinterprets it.

*Littlefield*, 388 B.R. at 5 (footnote omitted).

The *Littlefield* court then came to the following conclusions:

11

> I must not impose my view of proper bankruptcy policy in place of Congress's. *United States v. Yellin (In re Weinstein)*, 272 F.3d 39, 46 (1st Cir. 2001). I am not in the business of assigning a meaning to Congress's words in order to reach a result that suits me. But neither am I charged with deconstructing Congress's language when a common sense reading of it makes its application crystalline. Reading the statute as I do means just this: Congress extended (910 days, as opposed to 1-year) antimodification protection to creditors holding pmsi's in motor vehicles acquired for a debtor's personal use. It did not target pmsi's in motor vehicles generally as a category of security that, but for the personal use proviso, would receive less antimodification protection than all other things of value.
>
> The hanging paragraph extends antimodification protection to purchase money creditors holding liens on a motor vehicle acquired by the debtor for his or her personal use if the debtor incurred the debt within 910 days of bankruptcy. I conclude that claims of creditors holding purchase money liens on motor vehicles acquired for nonpersonal use of the debtor cannot be modified if the debtor incurred the debt within a year of the bankruptcy filing.

*Littlefield*, 388 B.R. at 6 (footnote omitted).

Based upon the plain language of the statute and the canons of statutory construction, this court agrees with the minority and respectfully disagrees with the majority to find that the hanging paragraph applies to the following types of collateral when a purchase money security interest secures the creditor's debt: (1) a motor vehicle purchased by the debtor *for personal use* within 910 days preceding the bankruptcy filing; and (2) any other type of property purchased by the debtor within the 1-year period preceding the bankruptcy filing, including motor vehicles purchased for non-personal use.

Applying fundamental rules of grammar, the court cannot find a way in which "acquired for the personal use of the debtor" does not directly modify only the term "motor vehicle," thus limiting the 910 requirement to motor vehicles acquired for a debtor's personal use. Each court addressing this issue agrees that motor vehicles acquired for non-personal use are not included within the 910

provision, and were that the question, the inquiry would end, and the Freightliner would be excluded from its application altogether. However, some of those courts have interpreted the "acquired for personal use" modifier to also apply to the 1-year provision, leading, in part, to the perceived ambiguities in the statute where, in fact, none exist. The placement of a comma followed by the conjunction "or" immediately after the statute's "personal use" language sets apart the 910 provision from the 1-year provision applicable to "any other thing of value." Once again referencing a basic rule of grammar which dictates that a comma preceding a coordinating conjunction links independent clauses, the "for personal use" clause cannot be interpreted to modify "any other thing of value" *because* the clauses are independent of one another. Accordingly, the 1-year provision contains no such limiting clause for "use," therefore, "any other thing of value" includes collateral acquired by a debtor for *any* use, whether personal or non-personal.

The other area of contention is the inclusion by Congress of the word "other" in "any other thing of value." Courts in the majority have found that if Congress intended to include non-personal use motor vehicles within the 1-year provision, it would not have needed to use the word "other" to describe the qualifying collateral. Citing to "[the] cardinal rule of statutory construction that significance and effect shall, if possible, be accorded to every word," the *Thompson* court deduced that it would have been unnecessary to include "other" in the provision. *Thompson*, 2009 Bankr. LEXIS 1993, at *9, 2009 WL 1758757, at *4 (quoting *Washington Market Co. v. Hoffman*, 101 U.S. 112, 115 (1879)). Similarly, the *Balsinde* court held that "the word 'other' is a word that connotes differentiation, [and the hanging paragraph] differentiates between motor vehicles and any other type of collateral[,]" with the result that acceptance of the minority view was "simply impossible" to do

"without ignoring the purpose and meaning of the word 'other.'" *Balsinde*, 2007 Bankr. LEXIS 4058, at *5-6, 2007 WL 4247642, at *2. Each of these interpretations, however, is dependant upon reading the 910 provision as being the exclusive method of treating motor vehicles under the hanging paragraph. In other words, according to these courts, a motor vehicle is excluded from the 1-year "any other thing of value" segment of the hanging paragraph. This reading does not employ the basic rules of grammar and is not supported by what this court deems to be a clear Congressional intent to offer additional protections to all holders of purchase money security interests, with those having as collateral motor vehicles acquired for personal use receiving the most favored treatment. Moreover, as both courts pointed out, each word included within the statute should be considered and its plain, ordinary meaning applied. Doing so with respect to the hanging paragraph leads to only one logical conclusion: the 1-year "catch-all" provision includes "any other thing of value" that is not a motor vehicle acquired for personal use.

Furthermore, in addition to providing preferred treatment to holders of purchase money security interests and as stated in *Hayes* and relied upon by the *Horton* court, the hanging paragraph evidences a clear Congressional intent to treat motor vehicle collateral differently than other collateral. *Hayes*, 376 B.R. at 664 n.13. That much being apparent, it seems incongruous that Congress would grant such favorable treatment to creditors holding a purchase money security interest in motor vehicles purchased for personal use while at the same time cutting off entirely creditors holding the same type of interests in motor vehicles purchased for non-personal use.

In summary, the court does not find the language of the hanging paragraph to be ambiguous. Any collateral acquired by a debtor within 1 year of the filing of his or her Chapter 13 case through

14

a purchase money security interest, regardless of whether it is for personal or non-personal use, falls within the scope of the 1-year provision. This includes motor vehicles acquired for non-personal use. Accordingly, because the Debtor purchased the Freightliner within the year preceding the filing of his case on October 20, 2009, and because DCFS has a purchase money security interest securing the debt that is the subject of its claim, § 506 does not apply. The Debtor cannot cramdown DCFS's secured claim, and the Amended Plan filed on February 9, 2010, cannot be confirmed as proposed.

An order sustaining DCFS's Objection to Confirmation and denying confirmation of the Debtor's plan, as amended, will be entered. The court will provide the Debtor a period of time to modify his Chapter 13 plan to provide for the secured claim of DCFS in the manner required by the § 1325(a) hanging paragraph as construed by the court, or, alternatively, to convert or dismiss his Chapter 13 case.

FILED: April 14, 2010

> BY THE COURT
>
> */s/ RICHARD STAIR, JR.*
>
> RICHARD STAIR, JR.
> UNITED STATES BANKRUPTCY JUDGE